# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **DEMOND MOORE,** | ) | **CASE NO. 1:22-cv-00548-MRB** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE MICHAEL R. BARRETT** |
| | ) | |
| v. | ) | |
| | ) | |
| **NEXT GENERATION HOSPITALITY LLC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF DEMOND MOORE'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

*/s/ Samuel T. Long*

Samuel T. Long (0103931)
**Spitz, The Employee's Law Firm**
11260 Chester Road, Suite 825
Cincinnati, Ohio 45246
Phone: (859) 317-5921
Fax: (216) 291-5744
Email: sam.long@spitzlawfirm.com

*Attorney For Plaintiff Demond Moore*

## I. INTRODUCTION

This is a highly fact-intensive case that is inappropriate for summary judgment because triable issues remain that a jury will have to decide with respect to Plaintiff Demond Moore's claims against Next Generation Hospitality, LLC, d/b/a Kings Inn & Suites ("Defendant") for disability discrimination, failure to accommodate, and retaliation. Moore worked for Defendant for about three months without incident, however, after Defendant rescinded his accommodation for his disability, Moore began experiencing difficulty with bending over and standing for long periods of time. Defendant subsequently denied Moore's request to reinstate his accommodation. Instead, Defendant retaliated against Moore and began reprimanding Moore. On March 14, 2024, Moore submitted a light duty authorization, Defendant. *Two weeks after* Moore submitted his written request for accommodation, Defendant terminated Moore's employment on March 26, 2024. It is evident that Defendant's purported reasons for adverse actions against Moore are pretext for discrimination and retaliation. There are questions of fact remaining for a jury, and Defendant's Motion for Summary Judgment should be denied.

## II. STATEMENT OF FACTS

### A. Moore's Hiring And Success At Kings Inn & Suites.

Kings Inn & Suites ("Defendant") hired Moore as a Houseman on or about October 1, 2020. Moore Depo. @ 74. (Moore Depo. Transcript previously filed as Doc #: 10-1). Moore was successful in his role with Defendant, and Defendant's Owner/General Manager Gaganpreet Kaur testified that Moore's "work ethic was great." (Kaur Depo. @ 31. (Kaur Depo. Transcript previously filed as Doc #: 10-2)). As a result, Moore was promoted to a supervisory role as Housekeeping Manager. (Kaur Depo. @ 30). There is no dispute that Moore performed well in his role prior to February 2021. (Kaur Depo. @ 30).

2

### B. Moore's Accommodation Is Rescinded.

Moore suffers from scoliosis and rheumatoid arthritis ("Moore's Disabilities"). (Moore Depo. @ 42-43). Initially, General Manager Nikki Williams provided Moore with an accommodation so that he would not be required to change bedding and clean rooms. (Moore Depo. @ 53-54). Williams had previously worked with Moore at another hotel and assured him that his disability would be accommodated when hired. (Moore Depo. @ 53-54). Accordingly, Moore was assigned to make sure the public areas of the hotel were clean and to remove debris. (Moore Depo. @ 98).

In February 2021, Moore's accommodation was rescinded, and Defendant assigned Moore to clean up to fourteen rooms per day, including changing the bedding, cleaning the bathrooms and showers, and vacuuming each room. (Moore Depo. @ 75). As a result, Moore began to experience symptoms of Moore's Disabilities, pain in his back. (Moore Depo. @ 98-99). Accordingly, Moore informed Defendant's General Manager Nikki Williams of his condition and requested that his accommodation be reinstated. (Moore Depo. @ 98-100). Specifically, due to his back condition Moore was unable to change bedding or similar duties which required prolonged bending, and Moore requested assistance from other housekeepers to perform this task. (Moore Depo. @ 85-86). Other housekeepers were available to assist Moore, who was in a supervisory role as Housekeeping Manager at that time. (Moore Depo. @ 85-86). Williams responded "just do the best you can." (Moore Depo. @ 101).

On February 8, 2021, Moore was written up for allegedly failing to complete the tasks that were assigned to him that day. (February 8, 2021 Statement by Gini Kaur, previously filed as Doc #: 10-4). Specifically, in the write up, Kaur alleged that Moore "only stripped 3-4 rooms out the 10 rooms he

3

was given. Did not make any beds per the instructions he was given." (*Id.*). Moore was unable to complete these tasks due to his back condition:

> Q. So when you were asked to make beds, did you refuse those orders?
>
> A. No, I didn't refuse. I went ahead, and I started, and I – and I couldn't – I couldn't – I couldn't complete it. I couldn't do it.

(Moore Depo. @ 61). Nevertheless, Defendant issued Moore a written warning for purportedly failing to complete his job duties. (February 9, 2021 Employee Discipline Form, previously filed as Doc #: 10-6).

### C. Defendant Issues A Second Write-Up To Moore.

On March 10, 2021, Moore received a second write up, again for allegedly failing to complete his tasks. (March 10, 2021 Employee Write Up, previously filed as Doc #: 10-7). However, the same tasks Moore was not "completing" were the tasks the Moore specifically was requesting an accommodation for – stripping bedding and similar cleaning tasks. (Moore Depo. @ 79). Specifically, Moore was reprimanded for getting assistance from another employee to complete some tasks which conflicted with his disability. (Doc #: 10-7). Thus, it is without doubt here that Moore was disciplined for getting an accommodation to complete his tasks, which his supervisors were aware of. Further, as a result of the write up, Moore was removed from his supervisory role. (Doc #: 10-7).

### D. Moore Submits A Light Duty Authorization.

Subsequent to receiving the second write-up due to his disability, on March 13, 2021, Moore went to go see his chiropractor to treat his back condition. (March 13, 2021 Authorization For Light Duty, previously filed as Doc #: 10-8). Moore was provided with an authorization for light duty, which stated that Moore could not lift more than thirty (30) pounds or engage in prolonged bending from March 13, 2021 to March 18, 2021. (Doc #: 10-8). Moore provided this authorization to Williams and Kaur on or about March 14, 2021. (Kaur Depo. @ 36). Moreover, Kaur testified that Defendant could have provided Moore with modified light duty work:

> Q. Were there any issues with providing the light duty request that he made in terms of staffing?
>
> A. No.

(Kaur Depo. @ 47). Nonetheless, Defendant did not want to accommodate Moore because he was allegedly "killing productively" by getting assistance for some tasks he could not complete. (Doc #: 10-7). Unsurprisingly, the day after Moore provided Defendant with his light duty form, on or about March 15, 2021, Kaur placed a statement in Moore's personnel file which stated that "Moore has been creating a hostile environment" and he "left his shift without completing the tasks he has been assigned for the day." (Doc #: 10-7).

Moreover, Moore testified that he complained to Kaur about Defendant's failure to accommodate his disability. (Moore Depo. @ 94-95). Likewise, Kaur testified that Moore complained regarding his inability to perform his job duties without an accommodation. (Kaur Depo. @ 63-64).

### E. Less Than Two Weeks After Moore Submits A Reasonable Accommodation Request, Defendant Terminates Moore.

*Two weeks after* Moore submitted his light duty authorization, on March 26, 2021, Defendant terminated Moore while he remained on light duty status. (Nikki Williams Statement, previously filed as Doc #: 10-11). Indeed, Williams's statement acknowledges that Moore was assigned light duty that day. (Doc #: 10-11). Moreover, Defendant purportedly terminated Moore because of his "hostile behavior and negative attitude" and because he was "disrespectful and insubordinate." (Doc #: 10-11).

### F. Affidavit By Rhonda Craddock.

In a sworn statement by former Housekeeping Manager Rhonda Craddock, she stated that although Defendant was aware that Moore had a medical condition which conflicted with his job duties, it did not provide him with an accommodation and reprimanded him when he did not perform

job duties which conflicted with his medical conditions. (Affidavit of Rhonda Craddock, attached as Exhibit A). Accordingly, Craddock's statement corroborates Moore's testimony that Defendant was aware of his disability but failed to accommodate him and subjected him to adverse employment actions due to his disability. (Ex. A).

### III.   MOTION FOR SUMMARY JUDGMENT STANDARD

The United States Supreme Court held in *Celotex Corp. v. Catrett*, that the moving party bears the initial burden of informing the district court of the basis for its motion. 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). Only if the moving party meets its initial burden does the burden then shift to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505 (1986). Summary judgment shall be denied "[i]f there are ...'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir. 1992). (**Emphasis** added). In determining whether a genuine issue of material fact exists, **a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party.** *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Finally, if the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. *Id.*

### IV.   MOORE HAS SHOWN THAT A GENUINE ISSUE OF MATERIAL FACT REMAINS AS TO HIS RETALIATION CLAIMS.

**A. Defendant Fails to Argue that Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claim (Count XV).**

In its Motion, Defendant fails to provide any argument supporting a motion for summary judgment on Plaintiff's retaliation claim. Indeed, Defendant's only reference to this claim is that "The Sixth Circuit has instructed that this Court should analyze both discrimination and retaliation claim under the McDonnell Douglas burden-shifting framework." (Doc #: 11). Defendant provides

6

no argument as to why it should be entitled to summary judgment on this claim. As a result, Defendant has failed to carry its burden to support its motion for summary judgment. For that reason alone, the Court should deny Defendant's Motion as to Count XV. Moreover, Plaintiff has demonstrated that genuine issues of material fact remain regarding this claim.

**V. DEFENDANT CANNOT ERASE ALL GENUINE ISSUES OF MATERIAL FACT REGARDING MOORE'S DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE CLAIMS.**

**A. The Direct Test Prima Facie Case Applies.**

The Court should deny summary judgment as to Counts VII, VIII, IX, and X of the Amended Complaint. Importantly, R.C. § 4112.02 was "modeled after the ADA. Thus, in determining whether [a plaintiff's] allegation establishes disability discrimination, [a court] can look to federal case law and regulations interpreting the ADA for guidance." *Kredel v. Austinwoods*, 2008 Ohio 5140, ¶ 8 (7th Dist.); *Columbus Civ. Serv. Comm. V. McGlone*, 82 Ohio St.3d 569, 697 N.E.2d 204 (1998). Traditionally, the *indirect* test for a prima facie case of disability discrimination under R.C. § 4112.02 is established where (1) the employee is disabled or perceived as disabled by the employer, (2) the employer took adverse employment action, at least in part, because the employee is disabled or otherwise treated the disabled employee differently than similarly-situated non-disabled employees, and (3) the employee, though disabled, can safely and substantially perform the job's essential functions, with or without reasonable accommodation. *Hood v. Diamond Products, Inc.*, 74 Ohio St.3d 298, 1996 Ohio 259, 658 N.E.2d 738; *Columbus Civil Service Commission v. McGlone*, 82 Ohio St.3d 569, 1998 Ohio 410, 697 N.E.2d 204. However, in the instant matter, the test is modified because Moore is an employee who did receive an accommodation for his disability, but that accommodation was **rescinded** by Defendant. Thus, based on established Sixth Circuit precedent, the *direct method of proof* applies, meaning, "the plaintiff must show (1) that he is an individual with a disability, and (2) that he is otherwise qualified for his job despite the disability '(a) without accommodation from

7

the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation.'" *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). Under this test, the *McDonnell Douglas* burden shifting approach does not apply. Indeed, as held in *Hostettler*, "**the direct test is the correct approach when an employer rescinds a reasonable accommodation.**" *Id*. at 853 (**Emphasis** added).

Defendant concedes that Moore suffered an adverse action, his termination, and only argues that Moore was not disabled and cannot identify a similarly situated non-protected employee who was treated more favorably. (Doc #: 11, PAGEID #: 258-59). However, as explained above, the direct test method is the correct approach in this scenario.

### B. Moore Had A Qualifying Disability.

*1. Defendant Is Attempting To Enforce A Narrow, Rejected Definition Of "Disability" Inconsistent With Current Law.*

Defendant's first argument is that Moore was not "disabled" as a result of his scoliosis. (Doc #: 11, PAGEID #: 258). However, in this case, Moore's light duty authorization specifically states that his condition limits his ability lift items and bend over, which are considered major life activities under the ADA. See 42 U.S.C. § 12102(2)(a). In a similar case, another Federal Court concluded: "The evidence cited above is sufficient for a reasonable juror to find that the plaintiff's scoliosis substantially limits his ability to perform the major life activities of bending and lifting." *Alleva v. Crown Linen Service, Inc.*, No. 3:14-CV-1971 (MPS), 2016 WL 4717758 *5 (D. Conn. Sep. 8, 2016).

Since 2008, the definition of "disability" has broadened under the ADAAA (ADA Amendments Act of 2008), and based on the federal regulations alone, which guide and interpret the enforcement of the ADA, Moore's medical conditions falls within the scope of him being "disabled" for purposes of his claims.

Indeed, Code of Federal Regulations § 1630.1(c)(4) begins with the following instruction for Courts interpreting and analyzing a claim involving the ADA (or Ohio equivalent, R.C. § 4112):

> *Broad coverage.* The primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, **the definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA**. The primary object of attention in cases brought under the ADA should be whether covered entities have **complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability**. The question of whether an individual meets the definition of disability under this part should not demand extensive analysis. (Emphasis added).

So, in reading the very "purpose" behind the ADA, as set forth by Federal Regulations, a reviewing Court's primary objective is to determine whether an employer has "complied with their obligations" and determine "whether discrimination has occurred," instead of engaging in an overly-narrow focus on the "definition of disability." This is consistent with the overall purpose to provide broad coverage "to the maximum extent permitted" under the law to aggrieved employees. That purpose is only heightened at the summary judgment level because at this stage, neither the plaintiff, nor the defendant, are attempting to "prove" their case, rather, summary judgment is merely a procedural measure to ensure a reasonable dispute between the parties as the salient issues a jury will ultimately decide.

From there, the Code of Federal Regulations, following the passage of the ADAAA, provides broad definitions and factors necessary to consider in the "disability" analysis. Of importance here, § 1630.2(j) provides the following mandates for "substantially limits":

> (i) The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. **"Substantially limits" is not meant to be a demanding standard.**

This subsection reiterates that the "substantially limits" analysis must be conducted "broadly" and in favor of "expansive coverage." Indeed, the CFR mandates that this analysis is not a "demanding" one.

>(iii) The **primary object of attention** in cases brought under the ADA should be whether covered entities have complied with their obligations and **whether discrimination has occurred,** not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment "substantially limits" a major life activity should not demand extensive analysis.

Subsection (iii) reinforces the mandate in subsection (i), emphasizing that the goal of the ADA, including the "disability" analysis, is to determine whether an employer has engaged in discrimination, not get bogged down in the nuances of defining a "disability."

>(iv) The determination of whether an impairment substantially limits a major life activity **requires an individualized assessment**. However, in making this assessment, the term "substantially limits" shall be interpreted and applied to require a degree of functional limitation that is **lower than the standard for "substantially limits" applied prior to the ADAAA**.

This subsection mandates that if a Court does engage in a "disability" analysis, it shall be done on a "individualized assessment" for that specific employee. This is a fact-intensive analysis, one that should ultimately be conducted by a jury, not a Court on summary judgment.

>(v) The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually **will not require scientific, medical, or statistical analysis**. Nothing in this paragraph is intended, however, to prohibit the presentation of scientific, medical, or statistical evidence to make such a comparison where appropriate.

Subsection (v) mandates that a plaintiff-employee can establish a disability, for purposes of a discrimination or failure to accommodate claim, without presenting scientific, medical, or statistical evidence. Again, at the summary judgment level, all that is required is a reasonable dispute of fact whether Moore's condition was disabling. As such, Moore had submitted sufficient evidence in this case to establish a question of fact regarding whether he had a qualifying disability.

### C. Alternatively, Defendant Perceived Moore To Be Disabled.

While Moore's disability satisfies the "actual" prong, even if that were not the case, he could still defeat summary judgment by showing that Defendant perceived him as being disabled. R.C. § 4112.01 defines "disability" to include "being regarded as having a physical or mental impairment." R.C. § 4112.01(A)(13). A "plaintiff meets the requirements of 'being **regarded** as' having a physical

10

or mental impairment if the 'individual establishes that he has been subjected to an action prohibited under [R.C. Chapter 4112 or 42 U.S.C. 12102] because of an actual or **perceived** physical or mental impairment **<u>whether or not</u>** the impairment limits or is **perceived** to limit a major life activity." *Field v. Medlab Ohio, Inc.*, 2012 Ohio 5068, ¶ 10 (8th Dist.) (**<u>Emphasis</u>** added); see also *Scalia v. Aldi, Inc.*, 2011 Ohio 6596, ¶ 25 (9th Dist.).

In the present matter, at the very least, Defendant perceived Moore to be disabled. In fact, Defendant disciplined and terminated Moore allegedly because he failed to perform job duties which conflicted with his disabilities. (Doc #: 10-7). Moreover, Defendant was aware of Moore's disabilities because he submitted a light duty authorization which stated his physical limitations. (Doc #: 10-8). Thus, there is no dispute that Defendant, at the very least, perceived Moore to suffer from a **"physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."** 2012 Ohio 5068, ¶ 10.

### D.  Defendant Has Not Presented Any Evidence Of An Undue Hardship That Prevented It From Accommodating Moore.

Defendant cannot point to any undue hardship which would have prevented it from providing Moore with a reasonable accommodation of assistance with performing tasks that required extensive bending or standing for prolonged periods. In fact, Kaur testified that providing light duty for Moore did not create any issues with staffing. (Kaur Depo. @ 47). Furthermore, as Moore testified, his accommodation which allowed him to avoid changing bedding and cleaning rooms was revoked in February 2021 when he was assigned up to fourteen rooms each day wherein he had to change bedding, clean bathrooms and showers, and similar tasks. (Moore Depo. @ 75, 100). As such, Defendant has failed to carry its burden here to show why his accommodation was rescinded and Moore's requests for reinstatement were denied.

Instead, Defendant argues that Moore never requested an accommodation other than in the light duty authorization which he submitted just two weeks prior to his termination. (Doc #: 11,

PAGEID #: 263). To the contrary, Moore testified he reminded Williams of his disability when hired and she assured him that it would be accommodated. (Moore Depo. @ 53-54). Further, Moore testified that he told Williams in February 2021 that he had difficulty completing his job duties due to his conditions after his accommodation was rescinded. (Moore Depo. @ 101-102). Likewise, the write up issued to Moore on March 10, 2021 specifically references that Moore obtained assistance others to complete some of his duties. (Doc #: 10-7). Accordingly, any argument that Defendant was unaware of Moore's accommodation request prior to the light duty form he submitted contradicts the record in this case. Moreover, Defendant has presented no evidence that it could not accommodate any of Moore's requests. Regardless, even taking Defendant's argument as true, Defendant admits it was aware of Moore's request for accommodation two weeks before he was terminated and instead of engaging in the interactive accommodation proceed with Moore, it terminated him within just two weeks. Therefore, Defendant cannot, as a matter of law, show this Court that they had a justifiable reason for rescinding and denying Moore's accommodation and terminating his employment.

### E. Defendant Failed To Engage In Any Interactive Process Regarding Accommodations For Moore.

Although Moore made Defendant aware of his disabling conditions, there is no evidence in the record that Defendant ever engaged in the interactive process with Moore. Indeed, Moore testified that he informed Williams that he needed his accommodation reinstated after was rescinded, and her only response was "just do the best you can." (Moore Depo. @ 101-102). Further, there is no evidence that Defendant ever engaged in any other effort to try to accommodate Moore's disabilities. (Kaur Depo. @ 45-47). It was only when Moore submitted a light duty form that Defendant put Moore on light duty consistent with his restrictions. (Kaur Depo. @ 46-47).

As stated by the court in *Orchard v. City of Novi*, "Because Plaintiff has shown a genuine issue about whether the City failed to accommodate his disability, he may also pursue a claim for failure to engage in the interactive process." 2022 WL 1494709, *8 (E.D. Mich.). The interactive process as

explained by the Sixth Circuit Court of Appeals in *Kleiber v. Honda of America MFG, Inc.*, requires the following:

> The ADA's regulations indicate that, "[t]o determine the appropriate reasonable accommodation for a given employee, it may be necessary for the employer to initiate an informal, interactive process with the employee. 29 C.F.R. § 1630.2(o)(3). The purpose of this process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Accordingly, the interactive process requires communication and good-faith exploration of possible accommodations. Even though the interactive process is not described in the statute's text, the interactive process is mandatory, and both parties have a duty to participate in good faith.

485 F.3d 862 (6th Cir. 2007). Critically, an employer's failure to engage in the interactive process is, itself, "an independent violation of the ADA [or R.C. § 4112.02]." *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014).

In *Orchard*, the district court, in denying summary judgment, held that the City failed to engage in the interactive process in denying reasonable accommodation regarding Orchard's lifting restriction related to his shoulder injury:

> Plenty of evidence shows that the City did not participate in the interactive process with Plaintiff in good faith. For instance, the Human Resources Director refused to consider permanent accommodations for Plaintiff's job. And a supervisor even foreclosed any chance that Plaintiff could work with a restriction. **The Director also admitted she and "everybody got together and decided that they just couldn't keep" accommodating Plaintiff**. In short, more than enough evidence shows that the City refused to even consider a permanent accommodation without talking to Plaintiff.

2022 WL 1494709, *9. (**Emphasis** added).

A question of fact remains whether Defendant was obligated to have an interactive discussion with Moore regarding any accommodation requests. Accordingly, Defendant is not entitled to summary judgment on Moore's failure to accommodate claims.

### F. No Pretext Analysis Is Needed, However, Even If It Were, There Is Supporting Evidence.

In its Motion, Defendant goes through a burden-shifting analysis, including a pretext discussion regarding Moore's claims. However, as previously noted herein, based on well-established

13

and controlling authority, the *direct method* of proof applies, and therefore, there is no burden-shifting process.

Still, even if this Court ventures into a pretext analysis, there is ample evidence supporting it for purposes of summary judgment. Importantly, to survive summary judgment, a plaintiff "**need not raise a genuine issue as to whether [the employer] acted with discriminatory intent, he need only raise a genuine issue […] that its purported reason for acting was factually false**." *Pollitt v. Roadway Express, Inc.*, 228 F.Supp.2d 854, 878 (S.D. Ohio 2002) (**Emphasis** added); *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Moreover, a plaintiff can refute the legitimate, nondiscriminatory reason articulated by an employer to justify an adverse employment action "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). A plaintiff using the second option "admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal," but "attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." *Id*.

In order to meet this burden, Moore need only "create a **factual dispute** that the explanation is a pretext for discrimination." *Williams v. Time Warner Cable*, 1998 Ohio App. LEXIS 2793, No. 18663 (9th Dist. 1998). (Emphasis added). Ohio courts have relied on this principle in reversing summary judgment decisions by trial courts. *Holbrook v. LexisNexis*, 169 Ohio App.3d 345, 862 N.E.2d 892 (2nd Dist. 2006); *Neely v. Franklin Cty. Aud.*, 97 Ohio App.3d 771, 647 N.E.2d 557 (10th Dist. 1994); *Jones v. Swagelok Co.*, 2004-Ohio-3876 (8th Dist. 2004); *James v. Delphi Automotive Systems*, 2004-Ohio-5493 (10th Dist. 2004). Moreover, when examining whether a plaintiff can show that a proffered reason for termination is pretext, the Sixth Circuit cautioned that

14

"in discrimination and retaliation cases, an employer's true motivations are particularly difficult to ascertain" and therefore specific allegations or evidence by the plaintiff are not necessary in order to create a genuine issue of material fact. *Singfield v. Akron Metro. Hous. Authority*, 389 F.3d 555 (6th Cir. 2004) citing *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983) (acknowledging that discrimination cases present difficult issues for the trier of fact, as "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes"). The Court in *Singfield* further stated that such factual determinations are frequently inappropriate for summary judgment. *Id*. (citing *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985) (stating that very little additional evidence is required to raise a genuine issue of fact regarding motive, and concluding that summary judgment on the merits is ordinarily inappropriate once a *prima facie* case has been established)).

Here, once again, Defendant's asserted "legitimate reason" for terminating Moore's employment is based on his alleged attitude. (Doc #: 10-11). Tellingly, Moore was never disciplined for any reason until after his accommodation was rescinded and he began experiencing symptoms of his disability and requested reinstatement of his accommodations in February 2021. (Moore Depo. @ 98-100). Likewise, Moore was reprimanded for having another employee assist with job duties, but Kaur testified that this did not create any issues. (Doc #: 10-7). Moreover, Moore was disciplined and terminated just two weeks after he submitted a light duty authorization. (Doc #: 10-8). Thus, the asserted "legitimate reason" for termination obviously did not actually motivate Moore's termination. Nothing more is required to deny summary judgment and send this matter to a jury trial.

## VI. <u>CONCLUSION</u>

Based on the foregoing reasons, Moore respectfully requests that the Court deny Defendant's Motion for Summary Judgment as to Counts VII-XI of the Complaint. Moore does not oppose the

dismissal of his claims for gender discrimination, sexual harassment, and hostile work environment, Counts I-VI.

Respectfully submitted,

*/s/ Samuel T. Long*

Samuel T. Long (0103931)
**Spitz, The Employee's Law Firm**
11260 Chester Road, Suite 825
Cincinnati, Ohio 45246
Phone: (859) 317-5921
Fax: (216) 291-5744
Email: sam.long@spitzlawfirm.com

*Attorney For Plaintiff Demond Moore*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2024, a copy of the foregoing was filed on the Court's Online Filing System and made available to all parties.

*/s/ Samuel T. Long*

Samuel T. Long (0103931)
**Spitz, The Employee's Law Firm**
