IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **DEMOND MOORE,** | ) | CASE NO. 1:22-cv-00548-MRB |
| | ) | |
| **Plaintiff,** | ) | JUDGE MICHAEL R. BARRETT |
| | ) | |
| v. | ) | |
| | ) | |
| **NEXT GENERATION HOSPITALITY LLC.** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF DEMOND MOORE'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES

### I.  INTRODUCTION

Plaintiff Demond Moore, by counsel, respectfully submits this memorandum in opposition to Defendant Next Generation Hospitality, LLC's ("NGH") Renewed Motion for Attorney's Fees. After prevailing on summary judgment, NGH now seeks the "extreme sanction" of attorney's fees, a punitive measure the Supreme Court and Sixth Circuit reserve only for cases that are "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421 (1978). This is not such a case.

To award fees here would require this Court to engage in the very "post hoc reasoning" the *Christiansburg* court explicitly prohibited. The fact that Moore's claims were ultimately unsuccessful on summary judgment, a decision later affirmed, does not render them groundless from their inception. Moore's lawsuit was built on a substantial factual foundation, including: (1) his sworn deposition testimony; (2) objective medical documentation of his physical restrictions; (3) a corroborating affidavit from a former NGH manager, Rhonda Craddock; and (4) a textbook timeline of retaliatory discipline.

NGH's motion rests on the flawed premise that an unsuccessful outcome proves a claim was frivolous from the start. This is not the law. To punish Moore for bringing a good-faith, fact-intensive civil rights case would create precisely the chilling effect on future litigants that the *Christiansburg* standard was designed to prevent. Accordingly, NGH's motion should be denied by this Court.

## II. STATEMENT OF FACTS

Moore was initially successful in his role with Defendant, as testified by Defendant's Owner/General Manager Gaganpreet Kaur, and was promoted to a supervisory role as Housekeeping Manager (Kaur Dep. 31. (Kaur Dep. Transcript previously filed as Doc. 10-2)). However, after Moore began to experience difficulty performing his tasks due to his scoliosis condition, he complained to his supervisors and was subsequently retaliated against. (Moore Dep. 98-100) (Moore Dep. Transcript previously filed as Doc. 10-1). Moore attempted to perform these tasks, but was reprimanded multiple times when he was unable to complete them. (Moore Dep. at 61). To attempt to prove to Defendant that he was unable to complete these tasks due to his condition, Moore visited his chiropractor to obtain supporting documentation and submitted it to Defendant. (March 13, 2021 Authorization For Light Duty, previously filed as Doc. 10-8). Although Moore submitted this to Defendant, he was never provided with any guidance or paperwork in order to submit a request for an accommodation in accordance with the ADA. (Moore Dep. at 98-101).

Further, Moore testified that his supervisor Nikki Williams treated him worse than his female coworkers, and tried to incite conflict between his coworkers, creating a hostile workplace. (Moore Dep. at 80-81). In addition, Moore testified that he disclosed his previous relationship with coworker Rhonda Craddock, and Williams attempted to create division with Craddock due to her bias against him. (Moore Dep. 78-82). Further, Moore testified was discriminated against by Craddock due to his previous relationship with her when she reprimanded him based on false accusations. (Moore Dep. at 93). Finally, on March 26, 2021, Plaintiff was terminated two weeks after his light duty

2

request purportedly for being "disrespectful and insubordinate" when he did not complete tasks which interfered with his disability and objected to being required to complete these tasks. (Doc. 10-11).

### III. LEGAL STANDARD

In general, federal court litigants are responsible for their own attorney's fees and litigation expenses. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). An award of attorney's fees to a prevailing defendant in a civil rights action is an "extreme sanction" that must be "limited to truly egregious cases of misconduct." *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001). A court may award fees only upon finding the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg*, 434 U.S. at 421.

Critically, a court must "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421–22. Losing on the merits is not the standard. "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985). Where a plaintiff presents credible evidence in support of their claim, an award of fees is not warranted. *Id.* at 183-84.

### IV. ARGUMENT

**A. Plaintiff's Claims Were Not Frivolous, Unreasonable, or Without Foundation.**

Defendant's central argument—that Moore's claims were baseless—is directly contradicted by the evidentiary record. Moore's case was built on multiple, connected pieces of evidence that provided a good-faith basis for his claims.

**1. The Disability Claim Was Factually and Legally Colorable**

Defendant's argument that the disability claim was frivolous ignores the broad, post-ADAAA definition of "disability" and the evidence Moore presented. Moore testified that his

3

scoliosis and rheumatoid arthritis limited his ability to bend and lift. (Moore Dep. 42–43, 98–99). This testimony was corroborated by the chiropractor's note imposing an explicit 30-pound lifting restriction and limitations on other demanding work. (Doc. 10-8). Lifting and bending are major life activities. *See* 42 U.S.C. § 12102(2)(A). A claim based on sworn testimony and a doctor's note restricting major life activities is not groundless, even if a court later finds the evidence insufficient to meet the legal threshold for trial. A plaintiff is not required to prove his case to a medical certainty before filing a complaint; he need only have a good-faith basis, which he clearly had here.

### 2. The Retaliation Claim Was Supported by Classic Prima Facie Evidence

Defendant cannot credibly argue the retaliation claim was frivolous. Requesting an accommodation is a protected activity. Moore's requests for help, his verbal complaints, and his submission of a doctor's note are all protected activities. The adverse actions followed in textbook temporal proximity. Most notably, his termination occurred on March 26, 2021—a mere twelve days after he submitted his light-duty authorization. This "very close" temporal proximity is itself sufficient to establish a prima facie causal connection for retaliation. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). A claim supported by such persuasive circumstantial evidence is the opposite of frivolous.

### 3. The Pretext Argument Was Grounded in Contradictory Evidence

Moore had a sound basis to argue NGH's proffered reason for his termination—"hostile behavior and negative attitude"—was pretext. First, the timing is deeply suspicious. Moore's performance was considered "great" and earned him a promotion before he began requesting accommodations. (Kaur Dep. 30–31). Only after his protected activity did his "attitude" become a problem. Second, NGH's rationale is subjective and contradicted by the record. The March 10 write-up disciplining him for seeking help can be reasonably viewed not as a legitimate performance issue,

4

but as further evidence of retaliatory animus. A jury could easily infer that NGH was papering his file in response to his protected activity.

### 4. A Corroborating Affidavit From a Former Manager Precludes a Finding of Frivolity

Most fatal to NGH's motion is the sworn affidavit of Rhonda Craddock, a former NGH Housekeeping Manager. (Doc. 13-1). Craddock, a member of management, directly corroborated the core of Moore's claims, attesting that: (1) NGH was aware of his medical condition; (2) NGH did *not* provide him with an accommodation; and (3) NGH reprimanded him for performance issues that conflicted with his medical condition. *Id.* A claim supported by sworn testimony from a former manager that directly contradicts the employer's defense cannot be deemed "without foundation."

### B. Losing on Summary Judgment Does Not Prove Frivolousness.

Defendant improperly conflates losing on the merits with filing a frivolous lawsuit. The Sixth Circuit has consistently held that an award of fees is not justified simply because a plaintiff's case is weak or because he ultimately loses. *See, e.g., Riddle v. Egensperger*, 266 F.3d 542, 552-53 (6th Cir. 2001) (holding that award of attorneys' fees to defendant was not supported by the record where there was no finding of egregious misconduct by plaintiffs). As explained by the Sixth Circuit, courts have held that "prevailing defendants should not be awarded fees where the plaintiff has an arguable basis for pursuing his or her claim." *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183-85 (6th Cir. 1985). Here, Moore presented a fact-intensive case with competing narratives and corroborating evidence. The District Court and Sixth Circuit simply weighed that evidence and found it insufficient for trial. That is the proper function of summary judgment; it is not a basis for imposing the "extreme sanction" of fees.

### C. Plaintiff's Strategic Decision Not to Oppose Summary Judgment on Certain Claims Is an Act of Sound Litigation Judgment, Not Evidence of Frivolousness.

Defendant argues that because Moore chose not to oppose the summary judgment motion on his gender discrimination, sexual harassment, and hostile work environment claims, those claims must have been frivolous. This argument misapprehends both the facts and the controlling legal standard. The strategic withdrawal of weaker claims at the summary judgment stage is a responsible litigation practice designed to conserve judicial resources, not an admission of frivolousness that warrants the "extreme sanction" of attorney's fees. *See Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001).

#### 1. **The Claims Were Not Groundless.**

A claim is not frivolous simply because it is not ultimately pursued. The core inquiry is whether the claims had a reasonable basis in fact and law *when brought*. *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421-22 (1978). Here, they did.

Moore's gender-based claims were predicated on his sworn testimony that his female manager, Nicky Williams, repeatedly raised his prior romantic relationship with a female supervisor, Craddock, and that this dynamic led to differential and unfair discipline against him that was not applied to Craddock. While discovery may not have borne out these claims as strongly as his disability and retaliation claims, they were based on Moore's personal experience and good-faith belief that he was being treated differently on the basis of his gender. This is not a case where a plaintiff proceeded with "no evidence" or on pure speculation. He had his own testimony, which is itself evidence. The *Christiansburg* standard protects plaintiffs who bring claims that are not incontrovertible, and to sanction Moore for these claims would engage in the exact "post hoc reasoning" the Supreme Court prohibited.

2. **Defendant's Authorities Are Inapposite and Highlight Why Fees Are Unwarranted Here.**

The cases NGH relies upon involve conduct far more egregious than what occurred here and are easily distinguished. In *EEOC v. Peoplemark, Inc.*, the Sixth Circuit upheld a fee award where the EEOC continued a nationwide class action lawsuit even after discovery "clearly indicated" that the factual basis for the suit, a discriminatory hiring policy, did not exist. 732 F.3d 584, 591-92 (6th Cir. 2013). The claim was based on a provably false premise. Here, Moore's claims were based on his own testimony and interpretation of events, which cannot be disproven with the same objective certainty.

Likewise, *Wilson-Simmons v. Lake Cnty. Sheriff's Dep't* involved a plaintiff who failed to produce *any* evidence supporting her claims. 207 F.3d 818, 821-24 (6th Cir. 2000). Moore, by contrast, provided sworn interrogatory answers detailing the basis for his claims and corroborating testimony.

Finally, NGH's reliance on *Pierzynowski v. Police Dept.* is misplaced. In that case, fees were awarded where the plaintiffs filed "shotgun charges," engaged in no discovery, and actively obstructed the defendants' discovery efforts. 947 F. Supp. 1147, 1149 (E.D. Mich. 1996). Moore's conduct was the opposite; he testified that reprimands that he received were due to discriminatory bias against him. (Moore Dep. at 78-83). Further, Moore testified that he was subjected to a hostile working environment. (Moore Dep. at 80-81). Thus, none of factors that were present in the cited cases are present in this case, and they do not support an award of attorneys' fees here.

3. **Not Opposing Summary Judgment Was a Responsible Act of Judicial Economy.**

Rather than "continuing to litigate" a claim which could not be definitively established by the evidence obtained through discovery, Moore made the responsible decision to narrow the issues for the Court by not opposing summary judgment on his secondary claims. This is a common and practical litigation practice that conserves the resources of both the parties and the judiciary.

To penalize a plaintiff for making this strategic concession would create a bad incentive to force litigants to defend every pleaded claim, no matter how strong, simply to avoid the threat of sanctions. This is the opposite of judicial economy. Moore's decision not to oppose summary judgment on Counts I-VI was not an admission that they were frivolous from the outset, but a recognition that his disability and retaliation claims were stronger and represented the core of his case. This is precisely the type of thoughtful, strategic assessment that should be encouraged, not sanctioned.

## V. CONCLUSION

Moore brought this action based on a good-faith belief, supported by testimonial, documentary, and corroborating evidence, that he was unlawfully terminated. To sanction him for doing so, merely because he did not prevail, would punish him for asserting his statutory rights and would send a chilling message to all employees seeking protection under federal law. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion for Attorney's Fees in its entirety.

Respectfully submitted,

*/s/ Samuel T. Long*

Samuel T. Long (0103931)
**Spitz, The Employee's Law Firm**
11260 Chester Road, Suite 825
Cincinnati, Ohio 45246
Phone: (859) 317-5921
Fax: (216) 291-5744
Email: sam.long@spitzlawfirm.com

*Attorney For Plaintiff Demond Moore*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2025, a copy of the foregoing was filed on the Court's Online Filing System and made available to all parties.

*/s/ Samuel T. Long*
Samuel T. Long (0103931)
**Spitz, The Employee's Law Firm**