**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| Demond Moore, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:22-cv-00548 |
| | ) |
| vs. | ) Judge Michael R. Barrett |
| | ) |
| Next Generation Hospitality LLC | ) |
| d/b/a Kings Inn & Suites, | ) |
| | ) |
| Defendant. | |

## ORDER AWARDING ATTORNEY'S FEES

This matter is before the Court on the Renewed Motion for Attorney's Fees (Doc. 26) filed by Defendant Next Generation Hospitality, LLC ("NGH") d/b/a Kings Inn & Suites, which Plaintiff Demond Moore opposes (Doc. 27).

**BACKGROUND.** The undersigned granted Defendant NGH's Motion for Summary Judgment (Doc. 11), dismissing with prejudice all eleven counts set forth in Moore's (First) Amended Complaint (Doc. 3). (*See* Doc. 15, Opinion & Order, issued 11/05/24).[1] NGH thereafter filed its initial motion for fees (Doc. 17)[2] as well as a Bill of Costs (Doc. 18). Moore timely filed a Notice of Appeal[3] and the cause was submitted to a Sixth Circuit panel of judges on the parties' briefs. *See Demond Alex Moore v. Next Generation Hospitality*

---

[1] The Clerk entered judgment the same day, November 5, 2024. (*See* Doc. 16).

[2] Moore filed a timely memorandum in opposition (Doc. 22), to which NGH replied (Doc. 23). This Court denied NGH's motion for lack of jurisdiction, but without prejudice to renew once Moore's appeal was decided. (Doc. 24). NGH initially sought an award of $20,543.00 in attorney's fees. (*See* Doc. 17 PAGEID 333, Docs. 17-1 & 17-2). Its renewed motion asks for $29,920.00. (Doc. 26 PAGEID 388).

[3] (Doc. 20).

1

*LLC, dba Kings Inn & Suites*, No. 24-4050 (6th Cir. Aug. 20, 2025). This Court's judgment was affirmed in an unpublished opinion issued October 29, 2025.[4]

**MERITS RULINGS BY THIS COURT.** The first six counts of Moore's (First) Amended Complaint alleged gender discrimination, sexual harassment, and hostile work environment claims under federal[5] and state[6] law. (Doc. 3 ¶¶ 54–115). Moore "d[id] not oppose" dismissal of these claims in response to NGH's summary judgment motion. (*See* Doc. 13 PAGEID 297–98). As to the remaining five, the Court found that Moore could not establish a prima facie case of disability discrimination regarding his termination (Counts VII & VIII),[7] which, in turn, undercut his failure to accommodate claims (Counts IX & X). And because he failed to identify any protected activity, Moore's claims for retaliation (Count XI) necessarily failed. Accordingly, this Court dismissed (with prejudice) all eleven counts.

**MERITS RULING ON APPEAL: disability discrimination.** On appeal, the Sixth Circuit first determined that this Court "properly applied the circumstantial evidence test to evaluate Moore's disability discrimination claims." (Doc. 25 PAGEID 374). "An ADA discrimination claim imposes a prima facie burden on the employee, requiring him to show that (1) he has a disability; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) he has suffered an adverse employment decision; (4) his employer knew or had reason to know of his disability; and (5) his position remained open,

---

[4] (Doc. 25).

[5] Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e

[6] Ohio Rev. Code § 4112.02(A)

[7] Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112; Ohio Rev. Code § 4112.02(A)

or he was replaced.  *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023)." *(*Doc. 25 PAGEID 374–75).[8] "The district court found that at most, Moore only met the second and third of the five elements necessary to establish a prima facie case on his disability discrimination claims – that he was qualified for a housekeeping position, and that he was terminated.  Accordingly, the district court found that NGH was entitled to judgment as a matter of law as to Counts VII and VIII.  We agree with the district court's conclusion."  (Doc. 25 PAGEID 375).  "Other than his own pronouncement, Moore has not provided any supporting evidence that he indeed suffers from scoliosis or has another diagnosis to form the basis of his disability claim and thus, he cannot establish a physical impairment pursuant to the ADA. *See Neely v. Benchmark Fam. Servs.*, 640 F. App'x 429, 433 (6th Cir. 2016)."  (Doc. 25 PAGEID 377.)  "Specifically, Moore argues that he 'provided testimony and submitted treatment records indicating that he suffers from a chronic back condition which limits his major life functions,' and cites to his own deposition.  However, his own deposition is not a treatment record, and in any event, the testimony Moore cites fails to discuss his condition."  (Doc. 25 PAGEID 377 (record citations & footnote omitted)).  "Because Moore fails to carry his burden of establishing that he suffers from a 'physical impairment,' he has not shown he is disabled under the first prong of the ADA's definition and necessarily also fails to meet the first element of his prima facie case of disability discrimination.  *See Neely*, 640 F. App'x at 435."  (Doc. 25 PAGEID 377).

---

[8] "Once the employee establishes a prima facie case of discrimination, 'the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse action.' *Thompson* [*v. Fresh Prods., LLC*], 985 F.3d [509,] 522 [(6th Cir. 2021)].  'If the employer meets its burden, the burden shifts back to the plaintiff to establish that the proffered reason was merely pretext for unlawful discrimination.' *Id.*" (Doc. 25 PAGEID 375).

3

Concerning the fourth element, the Sixth Circuit acknowledged, "'A prima facie case is not made out if the decisionmaker is unaware of the specifics of an employee's disabilities or restrictions, even if the decisionmaker has a general knowledge that a disability exists.' *Hrdlicka*, 63 F.4th at 568 (internal quotation marks omitted). And despite Moore's assertions and Craddock's sworn affidavit, which contradicts her February 2021 Incident Report about Moore's job performance, the only evidence that he can point to is his chiropractor's 'Authorization for Light Duty' meant to alleviate his unspecified condition, for a period of six days. '[V]ague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA.' *Id.* (internal quotation marks omitted). Also in the record, supporting NGH's argument that it was unaware of Moore's alleged disability, are the two questions left unanswered on Moore's job application: (i) whether he could stand on his feet for long hours; and (ii) whether he had any health issues or concerns. During his deposition, Moore was asked why he had left the answers to those questions blank. Moore claimed that 'there were two job applications.' . . . When pressed further on whether there was a separate job application containing the details of his health issues, Moore replied that he could not remember because he did not have the other application in front of him." (Doc. 25 PAGEID 378–79 (record citations & footnotes omitted)). "As the non-moving party, Moore was required 'to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy' to survive summary judgment. *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (citation modified). Here, the district court correctly found that Moore needed 'specifics supporting facts to forestall summary judgment,' but he failed to provide exactly those

4

facts showing King's Inn was aware of his purported disability." (Doc. 25 PAGEID 379 (record citations omitted)).

"Lastly, the district court found that Moore had 'not identified a nondisabled comparator employee or pointed to evidence that, after he was fired, he was replaced by a nondisabled person or that his position remained open.' The failure to identify a comparator 'alone precludes [a plaintiff] from sustaining his burden of presenting a prima facie case of disability discrimination.' *Griffin* [*v. Sec'y of Def.*, No. 23-3220], 2023 WL 8437145, at *3 [(6th Cir. Dec. 5, 2023)]; *see also Hoffman v. O'Malley*, 849 F. App'x 535, 539 (6th Cir. 2021) (affirming a grant of summary judgment when the plaintiff-appellant 'failed to present to the district court evidence on the disability status of any of the employees she alleged were treated more favorably than her.')." (Doc. 25 PAGEID 380 (record citations omitted)).

**MERITS RULING ON APPEAL: failure to accommodate.** The Sixth Circuit turned next to Moore's failure to accommodate claims. "To establish a prima facie case for failure to accommodate, an employee must show that: (1) he was disabled within the meaning of the ADA; (2) he was otherwise qualified for his position, with or without reasonable accommodation; (3) the defendant knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the defendant failed to provide the necessary accommodation. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 669 (6th Cir. 2020)." (Doc. 25 PAGEID 380–81).[9] "Here, the district court relied on its prior finding that Moore did not have a disability, concluding that Moore did not

---

[9] "'If the plaintiff makes this showing, then the burden shifts to the employer to show that the accommodation would cause undue hardship for the employer. *King* [*v. Steward Trumbull Mem'l Hosp., Inc.*], 30 F.4th [551,] 560 [(6th Cir. 2022)].'" (Doc. 25 PAGEID 381).

satisfy the first element. . . . Because Moore failed to prove that he suffers from a disability as defined by the ADA, he did not successfully establish a prima facie case for failure to accommodate and thus, we affirm the district court's ruling on Counts IX and X." (Doc. 25 PAGEID 381).

**MERITS RULING ON APPEAL: retaliation.** "A prima facie case for retaliation requires a showing that '(1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action.' *Rorrer v. Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014)." (Doc. 25 PAGEID 381). "The district court held that because Moore was unable 'to identify any protected activity, his claims for retaliation (under the ADA and the Ohio counterpart) necessary fail[ed].' Although we ultimately agree with the district court's grant of summary judgment to NGH on this count, we note that Moore did, in fact, engage in protected activity by submitting an 'Authorization for Light Duty' to King's Inn." (Doc. 25 PAGEID 382 (record citation & caselaw citations omitted)). "Nevertheless, NGH correctly argues that Moore failed to properly show that a causal connection exists between his alleged disability and an adverse action taken against him by King's Inn. Indeed, NGH put forth several justifications for its adverse employment decision to terminate Moore, effectively demonstrating that there was no causal connection between Moore's termination and his alleged disability. And in his opening brief, Moore devoted a mere two paragraphs to his retaliation claim, focusing solely on the fact that his accommodation request constituted a 'protected activity.' Moore did not attempt to prove his prima facie case for retaliation, let alone address any supposed pretext for NGH's nondiscriminatory explanations for its

6

conduct[.]"  (Doc. 25 PAGEID 382 (record citation omitted)).  "Thus, he waived his argument."  (Doc. 25 PAGEID 383 (caselaw citations omitted)).

**LAW & ANALYSIS.**  NGH brings its motion under 42 U.S.C. § 1988(b), a fee shifting provision that reads: "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]"  This provision, though, applies to specifically enumerated civil rights statutes, none in play here. *See, e.g., Falor v. Livingston Cnty. Cmty. Mental Health*, No. 5:02-CV-60, 2003 WL 23220759, at *1 (W.D. Mich. Oct. 20, 2003).  But the two federal civil rights statutes under which Moore did sue, Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990, include nearly identical fee shifting provisions[10] that are interpreted applying the same body of law.  *See Falor*, 2003 WL 23220759, at *1 n.1 (citing *Hughes v. Rowe*, 449 U.S. 5, 14 (1980)).

Neither fee shifting provision distinguishes between prevailing plaintiffs and prevailing defendants.  Yet as the Supreme Court has explained, a Title VII *plaintiff* "should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).  "To determine whether a claim is frivolous, unreasonable or groundless, the court must determine plaintiff's basis for filing the suit."  *Riddle v. Egensperger*, 266 F.3d 542, 548 (6th Cir. 2001) (citing *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 185 (6th Cir. 1985)).

---

[10] "Under Title VII, a court may award the prevailing party 'a reasonable attorney's fee (including expert fees).'" *EEOC v. HP Pelzer Automotive Systems, Inc.*, 836 F. App'x 422, 427 (6th Cir. 2020) (citing, *inter alia*, 42 U.S.C. § 2000e-5(k)).  Under the ADA, a court, "in its discretion, may allow the prevailing party[ ] . . . a reasonable attorney's fee, including litigation expense, and costs[.]"  42 U.S.C. § 12205.

"Awards to prevailing defendants will depend on the factual circumstances of each case." *Smythe-Cramer*, 754 F.2d at 183.

"When determining if a prevailing defendant should be entitled to attorney's fees, factors we consider include whether: (1) the plaintiff successfully alleged a prima facie case of discrimination; (2) the defendant offered to settle the case; and (3) the trial court dismissed the case before trial." *EEOC v. HP Pelzer Auto. Sys., Inc.*, 868 F. App'x 422, 428 (6th Cir. 2020) (citing *EEOC v. Peoplemark,* 732 F.3d 584, 591 (6th Cir. 2013)). In *Pelzer*, the Sixth Circuit determined that the district count acted within its discretion in *declining* to award attorney fees to the employer, because "[t]he record shows that the EEOC successfully alleged a prima facie case of retaliation, Pelzer did not offer to settle, the EEOC's claims survived various motions, and the case was ultimately decided by a jury." *Id.* at 428.

The record here is quite different, indeed nearly the opposite. Moore did *not* successfully allege a prima facie case of disability discrimination, failure to accommodate *or* retaliation. His claims did *not* survive motion practice and, accordingly, were *not* ultimately decided by a jury.

NGH did participate in settlement negotiations (via *ex parte* calls with the Court) that took place after Moore's deposition. It initially offered to accept a "walk away," and, in exchange for mutual releases, NGH would agree to not pursue claims for costs or attorney's fees. At the Court's urging, it reluctantly agreed to offer $3,000 (to be paid over a period of months). A client representative explained that NGH is a small family business that runs only a few hotel franchises and, at the time, was just starting to recover from the

8

aftermath of the pandemic lockdown.  Impasse was quickly declared when Moore declined to settle for this amount.

"A plaintiff who continues to litigate claims after discovery has concluded, proceeds to summary judgment, and a judge thereafter rules that the claims are without merit, does not **necessarily** support the conclusion that the plaintiff's claims were frivolous, unreasonable, or groundless, **especially if there are viable claims intertwined to the meritless claims**."  *Riddle*, 266 F.3d at 551 (bold emphasis added).  However, *none* of Moore's claims were viable, because he failed to establish a prima facie case of discriminatory treatment—a burden characterized by the Supreme Court as "not onerous."[11]

As noted earlier, in response to NGH's summary judgment motion, Moore "d[id] not oppose" dismissal of the first six of his eleven claims.  But in the Court's view, his oh-by-the-way acquiescence[12] was too little, too late.  Moore's counsel argues that "[t]he strategic withdrawal of weaker claims at the summary judgment stage is a responsible litigation practice designed to conserve judicial resources, not an admission of frivolousness that warrants the 'extreme sanction' of attorney's fees."  (Doc. 27 PAGEID 404 (citing *Riddle*, 266 F.3d at 547)).  In the abstract, this statement carries some truth.  Opposite Moore's deposition testimony, it does not.

> Q. Were you treated differently by the defendant in this case on the basis of your gender?
>
> A. Who are we talking about?

---

[11] *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

[12] (*See* Doc. 13 PAGEID 297–98).

Q. Well, [General Manager Nikki] Williams, did she treat you differently than she treated women?

A. I don't know what kind of question that – I don't know what kind of question that is.  Of course she did.  She's a woman.  Women talk to women different than they do men, so of course.  I'm quite sure.

Q. Okay.  How did Ms. Williams discriminate against you on the basis of your gender?

**A.** I didn't – **I didn't say she discriminated against me on my gender.  You asked me did she treat me different.  I said she treated me different because I was a male.  <u>You know, just different in conversation.</u>  Like women say hey, girl, how are you doing.  She wouldn't say hey – you know, she would say hey, Alex, how are you.  And that's – stuff like that, that was it.**

Q. <u>**So did anyone at Kings Inn & Suites discriminate against you on the basis of your gender during your employment?**</u>

A. <u>**No, not because I'm a man.**</u>

(Doc. 10-1, Moore depo., PAGEID 160–61 (81:17–82:18) (bold & underline emphasis added)).  By his own admission, Moore's gender discrimination claims (Counts I & II) weren't weaker, they were groundless.

The same holds true for his sexual harassment (Counts III & IV) and hostile work environment (Counts V & VI) claims.  The record evidence established that Moore and Rhonda Craddock, NGH's housekeeping manager, had a previous consensual sexual relationship.  (Doc. 10-1, Moore depo., PAGEID 147 (26:4–28:19)).[13]  As NGH pointed out in its summary judgment motion, though, Moore "offer[ed] no evidence or testimony

---

[13] (Doc. 10-1, Moore depo., PAGEID 147 (28:1–19) (Q. When was the last time you had sexual relations with Ms. Craddock?  A. Oh, it's been a while.  **Q.** Okay.  So was it before – did you – I mean, let me rephrase that.  **Was the last time you had sex with Ms. Craddock prior to your working at Kings Inn? A. Yes.**  Q. Why did you guys stop having sexual relations?  A. What do you mean?  We – I don't – I'm not – we just don't do it.  I don't – I just – I'm not interested.  Q. So just so I'm clear, at some point prior to your working at Kings Inn, you guys stopped having sexual relations, but you can't tell me why? A. We just stopped.  There was no reason.") (bold emphasis added)).

which would permit a jury to find that Craddock made any unwelcome sexual advances towards him, threatened to terminate or affect h[is] employment unless they re-started the sexual relationship, or in any way demanded sex from him." (Doc. 11 PAGEID 261). Moreover, as far as Moore knew, Gini Kaur—the "acting owner" on the property that fired him—knew nothing about his previous relationship with Craddock.[14]  As to work environment, Moore testified that General Manager Nikki Williams "made it a very – a very not pleasant place to work." (Doc. 10-1, Moore depo., PAGEID 148 (30:13–24)). His lone examples: "She wants you to go outside and wash windows.[. . . And] had you out there shoveling snow with a snow – with a snow blower, and you out there shoveling snow around the whole parking lot[.]" (*Id.* PAGEID 148 (31:6–17)).  As to both tasks Moore commented, "You hire a company for that." (*Id.*).  It is well established that "'petty slights or minor annoyances that often take place at work and that all employees experience' are insufficient to establish a hostile work environment claim." *Morgan v. Triumph Aerostructures, LLC*, 296 F. Supp. 3d 911, 924 (M.D. Tenn. 2017) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 58 (2006)).[15]  To the Court's mind, window washing and snow shoveling fall within the spectrum of chores necessary to maintain a commercial property.  Regardless, it bears repeating—Moore's sexual

---

[14] (Doc. 10-1, Moore depo., PAGEID 158 (70:25–71:16) ("Q. . . . Did the manager on duty know that you had had a previous sexual relationship with Rhonda Craddock?  A. I don't know.  Q. Do you have any reason to believe she would know?  A. I don't know.  I can't answer that question.  Q. Did you ever tell her?  A. No, I didn't have discussions like that with her.  That's personal.  Q. So just so we're clear, it's your testimony today that you never told Gini Kaur that you had a sexual relationship with Rhonda Craddock?  A. We never had a discussion about that, that is correct.")).

[15] Title VII, after all, "is not 'a general civility code for the American workplace.'" *Morgan*, 296 F. Supp. 3d at 924 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

harassment and hostile work environment claims weren't weaker, they (too) were groundless.

The undersigned is keenly aware that an award of attorney's fees against a losing plaintiff in a civil rights action is "an extreme sanction" reserved for "truly egregious cases." *Machie v. Detroit Library Comm'n*, No. 12-15299, 2014 WL 4598991, at *3 (E.D. Mich. Sept. 15, 2014) (quoting *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)). Regrettably, this case falls in that category.  It was arguably "groundless" from the get-go; at any rate, Moore continued to litigate these claims after it "clearly became so" following his deposition.  *See Christiansburg Garment Co.*, 434 U.S. at 422.[16] Accordingly, fees will be awarded beginning March 4, 2024, the date NGH's attorney began drafting its summary judgment motion,[17] and ending on March 28, 2025,[18] the date NGH's attorney finalized and filed its appellate brief in the Sixth Circuit Court of Appeals.

**FEE AWARD.**  The determination of reasonable fees begins with a lodestar calculation, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005).

---

[16] *See generally Patterson v. United Steel Workers of Am.*, 381 F. Supp. 2d 718, 720–21 (6th Cir. 2005) (citing *Riddle*, 266 F.3d at 550, "In reversing the district court's award of attorneys' fees to the defendants after their summary judgment motion was successful, the Court of Appeals noted that the **district court had not made a specific finding** that the claims were "groundless at the outset" nor a finding **that the plaintiffs continued to litigate after it 'clearly' became so**.") (bold emphasis added).

[17] *See Southall v. USF Holland, Inc.*, No. 3:15-cv-01266, 2021 WL 1397221, at *5 (M.D. Tenn. Feb. 10, 2021) ("The Court finds that both Defendants are entitled to attorneys' fees and non-taxable expenses, including fees and non-taxable expenses for the appeal, pursuant to the above-cited authority under the ADA, for their attorneys' efforts since the time Defendants' motions for summary judgment were filed on May 18, 2018. **The Court finds that Plaintiff's failure to dismiss this litigation after it became clear (at the latest when Defendants filed their motions for summary judgment detailing the obvious and fatal flaws to Plaintiff's claims), that his claims had no merit, justifies an award of attorneys' fees to Defendants for attorneys' fees and nontaxable costs incurred after May 18, 2018.**") (bold emphasis added).

[18] No diary records beyond this date were submitted.

Moore does not contest either the number of hours spent, or the hourly rate charged, by NGH's counsel.

Hourly rates should be calculated according to "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "relevant community" for purposes of determining the "prevailing market rates" is the "legal community within that court's territorial jurisdiction." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). *See Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020) ("This circuit uses the 'community market rule' to calculate a reasonable billing rate.") (citing *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995)).

Judges in the Southern District of Ohio often refer to the matrix established by the Rubin Committee, which published the "list of pre-calculated billing rates tiered by years of experience." *Linneman*, 970 F.3d at 630. Because these base rates were established in 1983, a four percent annual cost-of-living adjustment is applied to keep them current. *Mitchell v. City of Cincinnati*, No. 1:21-cv-626, 2024 WL 5041020, at *3 (S.D. Ohio Dec. 9, 2024); *QFS Transp., LLC v. Murphy*, No. 1:21-cv-00770, 2023 WL 2785589, at *1–2 (S.D. Ohio Jan. 19, 2023).

Joshua Adam Engel is a partner at the law firm of Engel & Martin, LLC and has been licensed to practice in Ohio since 2003.[19] Mr. Engel qualifies as a "Senior Partner (21+ years)" per the Rubin matrix. The Court calculates the Rubin Committee hourly rate for a "Senior Partner" in 2024 to be $641, increasing to $667 in 2025. Mr. Engel's "usual

---

[19] Supreme Court of Ohio, Attorney Directory Search available at https://www.supremecourt.ohio.gov/attorneysearch/#/75769/attyinfo (last visited 6/25/2026)

and customary" rate is **$400**, well below both Rubin Committee rates.  The Court finds this hourly rate to be reasonable.

Review of the billing records attached to Mr. Engel's affidavit shows that he spent 23.4 hours related to NGH's summary judgment motion, 2.5 hours on its bill of costs and initial motion for fees,[20] and 19.5 hours related to the appeal Moore took to the Sixth Circuit.  Because none of these entries appear to be excessive or otherwise unnecessary, no time will be excluded.  Accordingly, NGH is awarded $18,160 ($400/hour x 45.5 hours).

**CONCLUSION.**  For the foregoing reasons, Defendant's Renewed Motion for Attorney's Fees (Doc. 26) is **GRANTED in PART**.  The Court awards prevailing party NGH **$18,160** in attorney's fees, to be paid by Plaintiff Demond Moore.[21]

**IT IS SO ORDERED.**

/s/ *Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court

---

[20] Time spent litigating the fee issue ("fees for fees") is properly included in any award.  *See Ne. Coal. for Homeless v. Husted*, 831 F.3d 686, 723, 724 (6th Cir. 2016) (citing *Weisenberger v. Huecker*, 593 F.2d 49, 53–54 (6th Cir. 1979)).

[21] NGH also brought its motion for fees under 28 U.S.C. § 1927, which provides: "Any attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  NGH does not analyze the facts against this standard, however, and Moore's counsel ignores the reference.

"A court must give notice to the party facing sanctions and an opportunity to be heard."  *NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 377 (6th Cir. 2022) (citing *Wilson-Simmons v. Lake Cnty. Sheriff's Dep't*, 207 F.3d 818, 822 (6th Cir. 2000)).  In the Court's view, NGH's nominal reference to § 1927 falls short of the due process owed to Moore's counsel (Samuel T. Long of Spitz, The Employee's Law Firm).  All references in NGH's motion for fees refers only to *Plaintiff* and never to "counsel."  Accordingly, Mr. Spitz will not be held jointly and severally liable for the attorney's fee award levied against his client.

14